The Honorable Tiffany M. Cartwright

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>EMILY VRANIC,<br>Defendant. | NO. CR25-5079-01 TMC<br><br>UNITED STATES SENTENCING MEMORANDUM |

Defendant Emily Vranic, with her co-conspirator, co-defendant, and wife Heather Marquis, operated as a prolific thief and fraudster from as early as 2021 until her arrest in November 2024. The two women sought out vulnerable and unsuspecting members of their Bremerton, Washington community, targeting their homes, cars, and mailboxes to obtain personally identifiable information they could later use in furtherance of their fraud scheme. Vranic and Marquis also took on the identities of several victims in vehicle registrations, financial accounts, identification cards, and even on phone calls related to the investigations of their abuses.

Evidence recovered from their shared home connects the Defendants to an estimated 278 victims; at least 50 of these have been confirmed in the subsequent federal



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

investigation. They attempted to steal over $330,000 and successfully obtained at least $268,126.74 through their fraud activities.

For the reasons stated in this Memorandum, the United States respectfully requests the Court sentence Vranic to 33 months in custody on Count 1, conspiracy to commit bank fraud; the mandatory 24 months on Count 13, aggravated identity theft; impose restitution totaling $111,784.53, representing the fraud proceeds which have not been recovered by the Defendants' victims; and impose a three-year term of supervised release.

## I. BACKGROUND

### A. Offense Conduct

#### 1. Vranic Engages in a Pattern of Vehicle Thefts, Leading to the Discovery of Her Financial Fraud Scheme and Related Identity Thefts.

Vranic and Marquis first came to law enforcement's attention through a string of vehicle thefts reported in and around Kitsap County. Investigations conducted by Bremerton Police Department and Kitsap County Sheriff's Office traced the thefts to incidents of vehicle registration and driver's license fraud committed by the Defendants. PSR ¶ 16.

At a high level, Vranic and Marquis requested driver's license and vehicle registration renewals online through the WA State Department of Licensing, directing the corresponding documents to be mailed to a victim's address. *Id.* Vranic and Marquis then intercepted the mail before the actual resident of the address received the documents. *Id.* The investigations concluded Vranic stole cars, boldly representing them as her own with the fraudulent registration materials when confronted by authorities.

On November 13, 2024, Bremerton PD executed a search warrant at the home Vranic shared with Marquis located at 1113 Dill Way, Bremerton, WA (the "Residence") as part of their ongoing vehicle theft investigation. PSR ¶ 19. During the search, officers observed large quantities of evidence suggesting Vranic and Marquis were committing



UNITED STATES ATTORNEY
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
253- 428-3800

additional crimes, primarily identity theft and bank fraud. Bremerton PD paused the search, obtained an amended warrant, and resumed their investigation.

That second search led to the discovery of approximately 278 individual victims whose personal information – including altered identification cards, bank cards, mail items, checks, and social security cards – was found in Vranic and Marquis' joint possession. PSR ¶¶ 19, 20, 23. Attached as Exhibit 2 to Postal Inspector Eric Huynh's Affidavit is a chart clearly displaying the various types of personally identifiable information (PII) recovered from the Residence, sorted by each victim.

Investigators also recovered handwritten dossiers or ledger (the "Ledgers") created by Vranic and Marquis in which they maintained victims' dates of birth, prior and current addresses, account numbers, account balances, security passwords, mother's maiden names, and other extremely sensitive pieces of data for use in their fraud scheme.

**2. Overview of Vranic and Marquis' Fraud Scheme.**

Due to Vranic and Marquis' use of the United States Postal System to commit their crimes, Bremerton PD referred the investigation to the United States Postal Inspection Service (USPIS). USPIS uncovered a years-long financial fraud scheme in which Vranic and Marquis stole mail containing the personally identifiable information of their victims, then used the stolen PII to gain access to victims' financial accounts. Plea Agreement ¶ 8(a). Once Vranic and Marquis successfully accessed the accounts, they transferred victim funds in a variety of ways, including direct transfers to and from various accounts in their name and the names of others victims, withdrawals from ATMs, depositing forged checks tied to victim accounts, and making online payments towards personal credit cards and loans on the Residence and their vehicles. *Id.*

In this manner, Vranic and Marquis brazenly defrauded at least fourteen different financial institutions, using the stolen PII of least ten individual victims to do so. Affidavit of Postal Inspector Eric Huynh at ¶ 6. They attempted to fraudulently transfer at



UNITED STATES ATTORNEY
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
253- 428-3800

least $350,000; successfully obtained $268,126.74; and left $111,688.54 unrecovered by their victims. *Id.*

**3. Vranic and Marquis target N.O., a vulnerable adult.**

Perhaps the most egregious conduct committed by Vranic and Marquis was their exhaustive victimization of N.O.

N.O. lived with her mother, V.O., in V.O.'s Port Orchard home until V.O.'s death in May 2022 at the age of 93. Huynh Aff. ¶¶ 13-14. Victim N.O. suffered from an undiagnosed cognitive issue for which she reportedly refused treatment. She was unemployed and had no viable job skills. When her mother passed away, N.O. inherited V.O.'s assets, which included V.O.'s investment accounts. *Id.*

Shortly after V.O.'s death, N.O. appointed a relative, J.T., to serve as her Power of Attorney with full financial access to her accounts. J.T. discovered Vranic and Marquis' fraud in approximately October 2023 and reported it to authorities. Huynh Aff. ¶ 14.

Vranic and Marquis began targeting N.O. at least as early as February of 2023. That month, Victim N.O. reported her car as stolen to Kitsap County Sheriffs' Office. When it was later recovered and searched, deputies found a purse behind the driver's seat. Inside was a wallet containing identification cards, bank cards, and a passport in Emily Vranic's name, as well as V.O.'s identification card.

At least as early as March of 2023, Vranic and Marquis engaged in a wholesale takeover of N.O.'s financial accounts. They began regularly withdrawing funds from N.O.'s accounts held with Kitsap Credit Union (KCU) and JPMorgan Chase (JPMC) until approximately October of 2023. PSR ¶¶ 14-15. Vranic and Marquis depleted N.O.'s JPMC Savings Account in its entirety, for a total unrecovered loss of $66,391.74. Huynh Aff. ¶¶ 17-19. Vranic and Marquis targeted N.O.'s accounts held with KCU for multiple large-scale transfers of $25,000-$35,000. They used a KCU bank card tied to N.O.'s account to make smaller point-of-sales purchases. They also used their unfettered access



UNITED STATES ATTORNEY
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
253- 428-3800

to N.O.'s accounts to make direct online payments to their mortgage on the Residence, auto loans, credit cards, and other expenses.

The PSR describes an incident in which Marquis impersonated N.O. in September of 2023, seeking to have KCU remove a fraud alert placed on a $35,000 wire transfer they'd made on August 8, 2023.[1] PSR ¶ 14. In fact, Vranic impersonated N.O. *many* times. For example:

- On June 9, 2023, Vranic (as N.O.) claimed to be having difficulty signing into her online account. When Vranic began asking detailed questions about the account, the KCU representative gave her a series of secondary, more difficult verification questions, including prior addresses of record and her mother's maiden name. Vranic (as N.O.) answered all questions correctly using the PII she'd stolen from N.O. and V.O. USA-00010282.
- On June 23, 2023, Vranic (as N.O.) called to regain access to the KCU account, which had been frozen by the bank's risk management department. In the call, Vranic asked whether KCU had received the death certificate she sent in for "her" mother and co-accountholder, V.O. Vranic, committed to her character, accepts the KCU representative's condolences on V.O.'s passing, assuring the representative that her "mother" was in her nineties, "so she lived a long life." USA-00010279.
- On June 27, 2023, Vranic (as N.O.) called KCU again seeking to change the designation of "her" Power of Attorney. In the call, Vranic accurately identifies N.O.'s existing Power of Attorney, and references documents Vranic fraudulently submitted to KCU seeking to change that individual's authority over N.O.'s accounts.

---

[1] The August 8, 2023, wire transfer was successful; the calls were related to KCU's attempts to claw back the funds from Vranic's other accounts once KCU discovered the wire was fraudulent.



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

In total, Vranic and Marquis successfully transferred $179,810.21 from N.O.'s accounts, using N.O.'s money to make car loan payments, mortgage payments, and pay for everyday living expenses. PSR ¶ 15; Huynh Aff. ¶ 23.

**4. Vranic and Marquis' Identity Thefts.**

Vranic and Marquis didn't just target victims' money – they also targeted victims' identities, using their personally identifiable information to commit and obfuscate their crimes. Vranic and Marquis also used victims' identities without their permission to activate credit and debit cards, using the cards for their own use. Plea Agreement ¶ 8(k).

a. <u>Defendants Use Victim Q.H.'s Identity to Commit Bank Fraud</u>

Victim Q.H. has not suffered any known financial loss; however, quantities of his PII was recovered from the Residence, including a driver's license and entries in the Ledgers containing Q.H.'s date of birth, current and prior addresses, and mother's maiden name. Hyunh Aff. ¶ 25. In June 2024, Vranic, Marquis, and their co-conspirators opened an account with Navy Federal Credit Union (NFCU) in Q.H.'s name. Hyunh Aff. ¶ 26. Defendants spent several months trying to deposit a $41,392 cashier's check they'd withdrawn from victim N.O.'s Chase Savings Account. *Id*. Their efforts included adding N.O. to the fraudulent NFCU account as a joint owner; submitting written letters posing as Q.H., claiming N.O. was Q.H.'s mother and the cashier's check a gift; and enlisting male co-conspirators to pose in person as Q.H. Huynh Aff. ¶¶ 28-32.

Vranic and Marquis attempted to deposit checks from other victims into the dummy Q.H. account with varying results. A check drafted from victim R.O.'s U.S. Bank account was rejected outright. Huynh Aff. ¶ 36. Another, drafted from Standard Guaranty Insurance Company for $8,674 in loss associated with a "burglary," was initially accepted by NFCU, only to be later returned when the bank discovered it was fake. Huynh Aff. ¶ 27. They successfully managed to deposit a third check totaling $2,082. *Id.*



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

b. <u>Defendants Use Stolen Mail to Commit Bank Fraud and ID Theft</u>

A more simplistic component of Vranic and Marquis' fraudulent activities was their pattern of stealing mail and activating and using credit cards found inside. For example, Vranic and Marquis stole victim J.S.'s mail containing a Lowes credit card. They activated the card and used it to make $6,227.18 in unauthorized purchases. Plea Agreement ¶ 8(l); PSR ¶¶ 21-22.




*Vranic using J.S.' stolen Lowes card in Bremerton, WA*




*Marquis using the Lowes credit card fraudulently opened in J.S.'s name*

Using J.S.'s PII obtained from the stolen mail, Vranic and Marquis later applied for, opened, and activated a second Lowes credit card in J.S.'s name. Defendants used the new Lowes card to make an additional $9,091.14 in unauthorized purchases. Plea Agreement ¶ 8(m); PSR ¶¶ 21-22.



UNITED STATES ATTORNEY
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
253- 428-3800

In a similar manner, Vranic and Marquis stole victim D.R.'s mail containing a Citi Bank credit card. Defendants activated and used the card to make $924.38 in unauthorized point-of-sale transactions throughout Kitsap County. Huynh Aff. ¶ 38. Shortly after stealing D.R.'s mail and Citi Bank card, Vranic and Marquis used D.R.'s PII to apply for and obtain a credit card with a $25,000 spending limit. *Id.* at ¶ 39. Fortunately, D.R. recovered the fraudulent credit card from her mail before it could be recovered and activated by the defendants. *Id.*

**5. Vranic and Marquis Profited from Fraudulent Mortgage Payments.**

Vranic and Marquis also used their victims' money to make payments towards a personal mortgage account held by Pennymac for the Residence they shared. PSR ¶ 26. Vranic purchased the Residence in February 2019. Though she was unemployed from approximately October 2020 until March 2025, Vranic maintained current payments on the mortgage through the duo's fraud scheme.

For example, on eleven separate occasions between October 7, 2023, and July 17, 2024, Vranic and Marquis used Wells Fargo accounts held by victim H.W. to make direct payments totaling $19,042.74 towards their mortgage. Despite H.W.'s diligent efforts to correct the fraud, $1,810.44 was never recovered. PSR ¶¶ 23-24; Huynh Aff. ¶¶ 48-50.

By using their victims' money to keep their mortgage payments current despite their lack of legitimate employment, Vranic and Marquis were able to sell the Residence in March 2025 at a profit of $140,510.05. PSR ¶ 24. A portion of that amount represents ill-gotten gains obtained through their fraud. *Id.*

**B. Procedural History**

Following the search warrant execution in November 2024, Vranic and Marquis were arrested and charged in Kitsap County with motor vehicle theft; possession of a motor vehicle; nine counts of identity theft, second degree; two counts of unlawful firearm possession, second degree; and two counts of forgery with intent to injure or defraud. PSR ¶ 57. On March 17, 2025, the government charged Vranic and Marquis by



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

complaint with one count of conspiracy to commit bank fraud. Dkt. No. 1. Kitsap County dismissed their charges shortly after. PSR ¶ 57.

On April 2, 2025, the grand jury returned a 14-count Indictment charging Vranic and Marquis with one count conspiracy to commit bank fraud; six counts of bank fraud; four counts of wire fraud; and three counts of aggravated identity theft. Dkt. No. 30. The co-conspirators both pled guilty to one count conspiracy to commit bank fraud and one count of aggravated identity theft, admitting much of the offense conduct described above. Dkt. Nos. 69, 76.

Vranic's sentencing is set for September 3, 2026, at 1:30 p.m. before this Court.

## II. SENTENCING GUIDELINES CALCULATIONS

### A. Offense Level

The Plea Agreement sets forth the minimum United States Sentencing Guidelines the parties agreed would apply in this case. *See* Plea Agreement ¶ 9. The government reserved the right to argue that the Court should apply the two-level increase under USSG § 3A1.1(b)(1) because Vranic knew, or should have known, that at least one victim of the offense was a vulnerable victim. *Id.*

The following chart reflects the differences in the proposed guidelines between Vranic's Plea Agreement and the PSR:

| Description | Cite | Plea | PSR |
|---|---|---|---|
| Base Offense Level | §2B1.1(a)(1) | 7 | 7 |
| Fraud loss between $250K and $550k | §2B1.1(b)(1)(G) | +12 | +12 |
| Offense involved ten or more victims | §2B1.1(b)(2)(A) | +2 | +2 |
| Unauthorized use of identification to produce or obtain another means of identification | §2B1.1(b)(11) | +2 | 0 |
| Defendant knew or should have known the victim of the offense was a vulnerable victim. | §3A1.1(b)(1) | Reserved | +2 |
| Defendant accepted responsibility | §§3E1.1(a), (b) | -3 | -3 |
| **Total Offense Level** | | **≥ 20** | **= 20** |



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

*See* Plea Agreement ¶ 9; PSR ¶¶ 31-43.

The government agrees with the U.S. Probation Office that the appropriate offense level to be applied on Count 1 in this case is 20. Notwithstanding the parties' agreement, the PSR correctly notes that because Vranic will receive a separate sentence for aggravated identity theft under USSG §2B1.6 in addition to a sentence for the underlying felony offense on Count 1 for conspiracy to commit bank fraud, the two-level increase under USSG §2B1.1(b)(11) does not apply. *See* PSR ¶ 39.

The government also agrees with Probation's determination that the two-level increase under USSG § 3A1.1(b)(1) applies to Vranic. Under well-established guidelines of conspirator liability, the analysis begins and ends with co-conspirator Marquis' admission that *she* knew, or should have known, that a victim was a vulnerable victim. *See* Dkt. 69 ¶ 9(e). According to USSG §1B1.3(a)(1)(B) (Relevant Conduct – Factors that Determine the Guideline Range), in the case of a jointly undertaking criminal activity, such as the fraud scheme here, the Court must determines adjustments under Chapter Three of the Sentencing Guidelines by considering "all acts and omissions of others" that were

> i) Within the scope of the jointly undertaken criminal activity,
> ii) In furtherance of that criminal activity, and
> iii) Reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

Targeting a vulnerable victim for financial fraud falls squarely within the scope of the Defendants' fraud scheme. Marquis' knowledge of N.O.'s vulnerable status is foreseeable to Vranic as an equal and highly activate participant in their shared scheme. Vranic's attempt to carve out exceptions from the knowledge she equally possessed through her co-conspirator and wife – with whom Vranic shared a home, financial accounts, and benefited equally from their joint fraud scheme – fails.



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

Even if Marquis' knowledge as a co-conspirator could not be imputed to Vranic for purposes of the guidelines, there is ample evidence Vranic personally knew about N.O.'s vulnerability. *See* PSR ¶ 36. Vranic not only knew N.O.'s age and the fact that a power of attorney had control of N.O.'s finances, Vranic *tried to change* N.O.'s power of attorney designation by submitting a forged legal document to Kitsap Credit Union.

What's more, N.O. was not the only vulnerable victim Vranic targeted. Multiple victims – including the individuals J.S., D.R., M.L., R.O., and C.W. described in the Huynh Affidavit – were over 70 years old when Vranic and Marquis stole from them. Their personally identifiable information, including dates of birth, was found in Defendants' possession. Vranic was well aware of her victims' vulnerabilities and should be held to account.

**B. Criminal History Category and Guidelines Range**

All previous charges related to the conduct described in the PSR and this Memorandum were dismissed after the government filed its Complaint in the instant case. The government, defense, and Probation agree Vranic is a Criminal History Category I. PSR ¶ 49.

The government agrees that the applicable guidelines range on Count One is 33 to 41 months, with a custodial sentence of 24 months to be imposed consecutively on Count Thirteen. PSR ¶ 98.

## III. FACTORS RELATED TO SENTENCING RECOMMENDATION

The United States respectfully requests that the Court sentence the defendant to 33 months of confinement on Count One (Conspiracy to Commit Bank Fraud), to be followed by the mandatory minimum term of confinement on Count Thirteen (Aggravated Identity Theft). The government further requests that Vranic's custodial sentence be followed by a 3-year term of supervised release under the conditions recommended by the U.S. Probation Office. The United States also requests the Court



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

impose restitution in the amount of $111,784.53. A review of pertinent Section 3553(a) sentencing factors, below, supports this recommended sentence.

**A. Vranic's Crimes are Serious.**

For years, Vranic lived entirely off the funds she stole from others. She repeatedly violated her victims' property, privacy, and financial stability. Over the course of their scheme, Vranic and Marquis stole *at least* $268,126.74. PSR ¶ 33. Ten victims suffered monetary losses from which they have not been made whole. *See* Exhibit 1 to Huynh Affidavit. Other victims were targeted by the defendants and fortunately recovered from their financial institutions without any actual loss. For example, Vranic and Marquis drained one couple's retirement account of $25,000. Their bank recouped their loss soon after they reported the fraud. *See* Exhibit 2 to Huynh Affidavit (Line Nos. 48, 85).

Other victims discovered financial instruments fraudulently opened in their names, including credit cards, checking accounts, and loans. These individuals' potential financial victimization results in an estimated attempted total loss of approximately $330,000. Still, that amount cannot account for the untold amounts of time and effort required to undo the defendants' damage.

The breadth of Vranic and Marquis' scheme is shocking. In addition to the victims described above, *at least 250 victims* suffered losses that simply cannot be quantified. Exhibit 2 to Postal Inspector Huynh's Affidavit categorized the various types of personally identifiable information found in Vranic's possession, including tax returns; social security cards; retirement account information; divorce filings; immunization paperwork; immigration records; and military records. Each of these victims represents a violation by Vranic and Marquis that extends beyond pure financial loss and deserves the Court's consideration in arriving at an appropriate sentence.



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

**B. A significant custodial sentence is needed to promote deterrence and respect for the law, as well as protect the public from future crimes.**

The record in this case is replete with conduct by Vranic revealing her willingness to lie, cheat, and circumvent the law for her own benefit. Consider Vranic's pattern of requesting driver's license and vehicle registration renewals using victims' information. PSR ¶ 16. According to investigations conducted by Kitsap County Sheriff's Office and Bremerton PD[2], in a September 2024 theft incident, Vranic stole a truck while its legal owner was in the hospital. While the legal owner remained incapacitated, Vranic forged signatures and used a stolen notary stamp to manufacture the documents necessary to register the vehicle to herself. Then, when a Bremerton police sergeant traced the stolen truck to the Residence, Vranic emerged from the house and presented law enforcement with the fabricated documents, boldly claiming to be the rightful owner. This was just one of three suspected vehicle thefts in which Vranic relied on falsified documents to steal cars and later claim them as her own.

Nor is the charged fraud scheme the only evidence of financial crimes committed by the defendant. For example, in August and September 2021, Vranic received direct deposits totaling over $30,000 in federal Pandemic Unemployment Assistance, a benefit program intended to help individuals affected by COVID-19. Huynh Aff. ¶ 74. To qualify for this relief money, Vranic submitted an application on May 5, 2021, in which she represented under penalty of perjury that she was "scheduled to start a job in Washington state but no longer [had] the job or [was] unable to reach the job as a direct result of the COVID-19 public health emergency." Huynh Aff. ¶ 75. In a similar fashion, Vranic represented to U.S. Probation that she was laid off from her most recent nursing job during COVID. PSR ¶ 65.

---

[2] Full records for both agencies' investigations related to the Defendants were provided to the defense in discovery.



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253-428-3800

But in an application for state unemployment benefits submitted just eleven minutes before her Pandemic Unemployment Assistance application, Vranic admitted that she had been fired by Atlas Medstaff in September of 2020 because of frequent absences. Huynh Aff. ¶ 76. This was confirmed by Atlas Medstaff, and ESD approved Vranic's application for unemployment benefits on August 26, 2021. *Id.*

Another suspiciously large deposit into Vranic's NFCU checking account led to the discovery that in April 2022, Vranic received a federal tax refund for FY 2021 totaling $29,663.78. Huynh Aff. ¶ 79. There is no dispute Vranic was unemployed for the entirety of 2021; she couldn't have possibly overpaid her wage withholdings to such a degree, because she earned no wage. A nearly $30,000 refund implies Vranic either (1) reported income and withholding that didn't exist; (2) submitted a tax return using another individual's identity; or (3) stole another individual's legitimate tax refund outright.

The totality of Vranic's conduct reveals a disturbing pattern of entitlement and callousness towards the law. Vranic needed money, so she figured out various ways to take it. The requested custodial sentence is necessary to protect the public and deter Vranic from committing additional crimes.

**C. Vranic's History and Characteristics Support the Requested Sentence.**

Vranic is a highly intelligent, college-educated woman from a good family. She demonstrates confidence in herself and her ability to defraud her victims, as evidenced by her flagrant behavior in doubling down whenever she is confronted about the potential illegality of her activities (see, e.g., her dogged persistence in contacting bank representatives posing as victims).

Vranic also undoubtedly suffers from a substance use disorder. But her conduct over the past 7 years cannot be attributed to drug use alone. Such a conclusion ignores the sophistication and planning her crimes required. The number of victims and the volume of evidence in this case was staggering – yet Vranic maintained diligent notes in her



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

Ledgers, keeping track of every individual, every account, every piece of personal information that would ensure her scheme's success. What's more, the variety of methods Vranic employed to steal from her victims was nothing short of labyrinthine to unravel.

Vranic's substance abuse certainly contributed to her commission of these crimes, in that it left her without gainful employment and a means to support herself. It should not wholly overshadow the severity and expansive nature of her crimes.

**D. The requested sentence avoids unavoidable sentencing disparities that will otherwise occur between the co-defendants.**

As described throughout this Memorandum, Vranic's conduct in furtherance of the bank fraud scheme was serious in its own right. The § 3553(a) factors support the 33-month sentence requested on Count One; it is a number sitting squarely at the low-end of Vranic's guideline range for that charge. *See* PSR ¶ 98. Vranic also pled guilty to one count of Aggravated Identity Theft under 18 U.S.C. § 1028A(1), as charged in Count Thirteen. As the Court is aware, this charge carries a 24-month mandatory minimum sentence that must be imposed consecutively to any other counts. PSR ¶ 96-97.

Critical to its analysis in arriving at an appropriate sentence, under 18 U.S.C. §1028A(1)(b)(3), the Court "shall not in any way reduce the term to be imposed" for Vranic's underlying felony "so as to compensate for, or otherwise take into account, any separate term of imprisonment imposed or to be imposed" for the aggravated identity theft charge. Respectfully, U.S. Probation's recommendation runs counter to this directive.

By recommending only twelve months on Count One and repeatedly referring to a recommended "total sentence of 36 months[3]," the U.S. Probation Office places improper

[3] Page 1 of the Sentencing Recommendation incorrectly describes the Government's agreed recommendation as "No more than 57 months." In fact, the Plea Agreement states, "[T]he United States agrees to recommend at the time of sentencing that the appropriate term of imprisonment to be imposed by the Court on Count One is a term not greater than 33 months, to run consecutively to the mandatory minimum term of 24 months to be imposed by the Court on Count 13." Plea Agreement ¶ 11.



UNITED STATES ATTORNEY
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
253- 428-3800

emphasis on the effect Vranic's aggravated identity theft charge will have on her overall sentence. *See, e.g.*, "In crafting a sentencing recommendation for the Court, I have considered the plea agreement, the advisory sentencing guidelines, *the mandatory minimum sentence*, and the statutory sentencing factors at 18 U.S.C. §3553(a)"; "Count 13, aggravated identity theft, carries *the bulk of the punishment in this matter*, a mandatory sentence of 24 months" (emphasis added).

The Court should not, and cannot, consider the mandatory minimum in this way. In fact, the PSR is clear that Probation's calculated offense level giving rise to Vranic's guideline range of 33-41 months "applied only to Count 1." PSR ¶ 30. This makes sense when considering the parties' discussion regarding the inapplicability of the two-level guidelines increase for Vranic's use of another's means of identification – the Sentencing Guidelines contemplate that the identity theft conduct will be captured elsewhere. A 33-month custodial sentence for Vranic's bank fraud scheme is warranted and should be imposed irrespective of the sentence imposed for aggravated identity theft.

Moreover, Vranic's sentence should not be analyzed in a vacuum, as the U.S. Probation Office points out in calling attention to co-defendant Marquis' sentencing that will follow Vranic's later this month. The disparities between the two co-defendants become stark when considering their differing backgrounds, which had an unmistakable impact on their pretrial release status. Vranic is supported financially by her upper-middle class parents. The stability of their home environment paved the way for her release. As a result, Vranic has had the privilege of seeking gainful employment in her parents' close-knit community and thriving. By contrast, Marquis has not enjoyed such a benefit. Though Vranic's ability to thrive on supervised release should be considered, it should not be given disproportionate focus.

Marquis is also Zero-Point Offender, which the government's agreed recommendation takes into account. Dkt. 69 ¶¶ 11-12. Sentencing Vranic to only twelve months on Count One leaves virtually no room for a sentence as to Marquis that could



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

adequately account for her co-equal and separate culpability and the benefit to which she is entitled based on her lack of criminal history.

Sentencing Vranic to a low-end guidelines term of 33 months for Count One is justified by virtue of the severity of her underlying felony conduct. The resulting 57-month total sentence is appropriate when considering the significant role her aggravated identity theft had in committing the fraud.

**E. The requested sentence provides restitution to the victims.**

Along with the requested custodial sentence, the government requests $111,784.53 in restitution to Vranic's victims. The Mandatory Victim's Restitution Act provides that "the court shall order . . . that the defendant make restitution to the victim of the offense" when the offense of conviction is one listed in the statute. 18 U.S.C. § 3663A(c)(1)(B). A victim under the MVRA is "any person directly harmed by the defendant's criminal conduct in the course of the scheme." 18 U.S.C. § 3663A(a)(1)-(2). The amount of restitution is calculated based on the victim's actual loss. See *United States v. Gagarin*, 950 F.3d 596, 607 (9th Cir. 2020), cert. denied, 141 S. Ct. 2729, 210 L. Ed. 2d 887 (2021). A district court has "wide discretion in fashioning restitution orders." *United States v. Grovo*, 826 F.3d 1207, 1221 (9th Cir. 2016). The government is required to prove the amount of a victim's loss for restitution purposes by a preponderance of the evidence. *See United States v. Peterson*, 538 F.3d 1064, 1075 (9th Cir. 2008).

The government requests that the Court enter a restitution order in the amount of $111,784.53, as supported in detail by the Huynh Affidavit. The government will provide a list of the individual victims and specific amounts attributable to each at the time of sentencing.

//

//

//



UNITED STATES ATTORNEY
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
253- 428-3800

## IV. CONCLUSION

For all the reasons set forth above, the government respectfully recommends the Court sentence defendant Emily Vranic to 33 months in prison on Count 1, 24 months in prison on Count 13, a three-year term of supervised release, and order restitution in the amount of $111,784.53.

DATED this 27th day of August, 2026.

Respectfully submitted,

*s/ Victoria Cantore*
VICTORIA CANTORE
Assistant United States Attorney
United States Attorney's Office
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
Phone: 253-428-3810
Email: victoria.cantore@usdoj.gov